IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DIRECT RESPONSE PRODUCTS,
INC.,

              Plaintiff,

      v.                               1:13-cv-1526-WSD

STEPHEN NICHOLAS THOMAS,
a/k/a NIK THOMAS, NIK
THOMAS CONSULTING, LLC,
and MARK ANDREW NITE

              Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants Stephen Nicholas Thomas[1]

("Thomas") and Nik Thomas Consulting, LLC ("NTC")'s, (collectively,

"Defendants"), Motion to Dismiss [17] and Motion to Compel Arbitration and Stay

Proceedings [18].

## I.      BACKGROUND

###      A.    Procedural History

On May 6, 2013, Plaintiff Direct Response Products, Inc. ("Direct

---

[1] On the docket, Thomas's first name is spelled "Stephen", but he states that the correct spelling is "Steven."

Response" or "Plaintiff") filed this action asserting claims against Defendants and against Mark Andrew Nite ("Nite")[2] for breach of contract.  On August 1, 2013, after filing an answer, Defendants moved to dismiss, arguing that the Court lacks jurisdiction over this diversity action because the amount in controversy does not exceed $75,000.  Defendants also moved to stay the case and to compel arbitration.

    B.    <u>Facts</u>

Direct Response stages sales events for car dealerships and is compensated based on the number of cars a dealership sells at an event (the "Event Compensation").  Thomas, NTC and Nite worked for Direct Response as independent contractors to market Plaintiff's events to dealerships.  Plaintiff and the independent contractors who successfully marketed the event to the dealership agreed to split the Event Compensation equally.

Defendants each entered into an independent contractor agreement ("IC Agreement") with Direct Response.[3]  The IC Agreement contained six-month non-

---

[2] Nite has not yet answered or otherwise responded to Plaintiff's Complaint.  On September 27, 2013, the Court extended, to October 31, 2013, the time for Nite to file an answer.

[3] The agreement to split the Event Compensation equally was also a term of the IC Agreement.

compete and non-disclosure provisions.[4]  Direct Response alleges that Thomas and Nite had access to Plaintiff's confidential and proprietary information, including sales leads, database contents, and marketing materials.

On January 7, 2013, Thomas and Nite terminated their independent contractor relationship with Plaintiff.  Plaintiff alleges that Defendants and Nite thereafter violated the IC Agreement by working for one of Plaintiff's competitors and by using Plaintiff's confidential information in performing services for the competitor.  Direct Response asserts claims for breach of contract, including a claim for attorneys' fees, and alleges that it has been damaged in the amount of $205,588.80.

Direct Response is a Georgia corporation with its principal place of business in DeKalb County, Georgia.  Thomas, NTC, and Nite all are citizens of Texas.  Plaintiff asserts that the Court has federal diversity jurisdiction over Plaintiff's breach of contract claims.  Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss this action for lack of subject-matter jurisdiction on the grounds that Plaintiff failed sufficiently to plead an amount in controversy that exceeds $75,000, as required under 28 U.S.C. § 1332.  Defendants also move to

---

[4] Nite's IC Agreement was executed on November 18, 2011, and Thomas and NTC's IC Agreement was executed on January 8, 2012.

dismiss, under 28 U.S.C. § 1391(b)(2), on the grounds of improper venue and, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.[5]

## II.   DISCUSSION

### A.   Legal Standard for Motion to Dismiss

Federal courts are courts of limited jurisdiction, and a federal court must take care to ensure that it has jurisdiction for all cases that come before it.  Rembert v. Apfel, 213 F.3d 1331, 1333-34 (11th Cir. 2000).  A district court must always be satisfied that it has subject-matter jurisdiction to hear a case, even if the question of jurisdiction is not raised by a party.  Id.  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject-matter jurisdiction, a court must zealously insure that jurisdiction exists over a case."  Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001).

Plaintiff asserts that this Court has federal jurisdiction over this matter under 28 U.S.C. § 1332.  Section 1332 provides that federal district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  The parties agree they are

---

[5] Defendants do not challenge the Court's personal jurisdiction over them.

diverse for purposes of Section 1332.  Defendants argue, however, that Plaintiffs failed properly to allege that the jurisdictional amount, required by Section 1332, is satisfied.  Defendants specifically claim that Plaintiff alleged damages in the amount of $205,588.80 does not meet the jurisdictional amount requirement to support diversity jurisdiction in this case.  As a result, Defendants argue, this action is required to be dismissed for lack of subject-matter jurisdiction.

B.     Jurisdictional Minimum Amount in Controversy in Diversity Cases

"In order to invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003); see 28 U.S.C. § 1332(a).  A plaintiff satisfies the amount in controversy if it claims, in good faith, an amount that exceeds $75,000.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). "While a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury."  Diefenthal v. Civil Aeronautics Bd., 681 F.2d 1039, 1052 (5th Cir. 1982).  Put another way, there must also be a sufficient basis to show the amount in controversy meets the requirements of Section 1332.

5

"Dismissal of a case brought under 28 U.S.C. § 1332 is proper where the pleadings make it clear to a legal certainty that the claim is really for less than the jurisdictional amount."  Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) (quotation omitted).  "[W]here jurisdiction is based on a claim for indeterminate damages, the . . . 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."  Federated Mut. Ins., 329 F.3d at 807.  "A conclusory allegation . . . that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [plaintiff's] burden."  See Leonard, 279 F.3d at 972 (quotation omitted) (addressing removal from state court); see also Federated Mut. Ins., 329 F.3d at 809 (noting that a party's mere speculation that the amount in controversy met the jurisdictional threshold did not satisfy its burden of proving beyond a preponderance of the evidence the claim at issue exceeded $75,000).

C.     Analysis

1.     *Plaintiff's alleged damages*

Direct Response asserts that Defendants' breach of the IC Agreement caused Plaintiff to be damaged in the amount of $205,588.80, (Compl. ¶ 38), and it is this

amount that Plaintiff claims to meet the jurisdictional amount requirement.

Plaintiff's basis for its damages calculation is not very well explained.  To support

its claim, Plaintiff begins by stating that Defendants competed with Direct

Response for six months, including by soliciting Direct Response's customers, and

using Direct Response's confidential and proprietary information, in violation of

the IC Agreement.  Direct Response then values its damages as follows:

1)  Direct Response and its independent contractors evenly shares in any Event Compensation earned from dealership sales events, (Compl. ¶ 19);

2)  In 2012, Thomas's share of Event Compensation was $126,553.80, (id. ¶ 25);

3)  In 2012, Nite's share of Event Compensation was $79,035.00, (id. ¶ 26); and

4)  "Based on simple math, the total amount of revenue generated by Thomas and Nite's . . . customers exceeded $410,000 during 2012. Six months of revenue would be roughly $205,000, which accurately reflects the value of the information, customers, and sales during the term of post termination restrictions, and the harm suffered by Plaintiff."  (Pff.'s Br. in Opp. at 5.)

Direct Response aggregates Thomas and Nite's share of the 2012 Event

Compensation, in this case approximately $205,000, and then doubles this amount

to reflect the total Event Compensation received in 2012 from Defendants'

customers.  This new figure of approximately $410,000 must then be reduced by

half, Direct Response argues, because the IC Agreement restricted Defendants

from competing with Direct Response for only six months.  In other words, Direct

Response is basing its alleged damages over six months in 2013 on the Event Compensation attributable to Defendants in a comparable time period in 2012. Plaintiff does not explain why the Event Compensation Defendants generated in six months in 2012 is related to the damages Plaintiff claims to have sustained in six months in 2013.

Defendants argue that Plaintiff has not sufficiently alleged a factual basis for the damages it allegedly sustained, and that Plaintiff's damages calculation is flawed. The Court examines whether Plaintiff's allegations support a claim for damages that meets the jurisdictional minimum.

### 2. *Damages available for breach of the IC Agreement*

Plaintiff claims that Defendants breached the IC Agreement by violating the six-month covenant not to compete and the nondisclosure provision. Typically plaintiffs seek injunctive relief to enforce non-compete agreements,[6] but, as with the breach of any contract provision, money damages may be sought for breach of a restrictive covenant or nondisclosure provision. In Georgia, "[t]he damages

---

[6] The law in Georgia, including a requirement for heightened specificity of the scope and duration and the absence of the "blue-pencil" rule, previously made enforcement of restrictive covenants difficult. In 2009, the Georgia General Assembly passed the Restrictive Covenant Act, which extended the enforceability of non-compete agreements and gave Georgia courts authority to "blue-pencil" otherwise unenforceable non-compete agreements. This act became effective on November 3, 2010.

recoverable for breach of a restrictive covenant are lost profits as well as the loss of

customers, the loss of employees, and the decreased value of the business property

purchased in reliance on the covenant.  Indeed, it has been stated that recoverable

damages are simply all damages incident to the breach." Ga. Contracts Law and

Litigation § 8:13 (2d ed.) (quotations omitted).  See e.g., Williamson v. Palmer,

199 Ga. App. 35, 36, 404 S.E.2d 131, 133 (1991), Gaines v. Crompton & Knowles

Corp., 190 Ga. App. 863, 864, 380 S.E.2d 498, 500 (1989).

The same standard of damages applies where a nondisclosure agreement is

breached, although when an employee wrongfully profits from the use of

information wrongfully obtained from his employer, damages also may be

measured by the employee's unjust gain derived from the unlawful use.

2 Callmann on Unfair Comp., Tr. & Mono. § 16:22 (4th ed.).

Direct Response has not here alleged *any* lost profits, lost customers, or lost

employees as a result of Defendants' alleged breach.  Plaintiff instead focuses on

the Event Compensation Defendants and Nite generated for Direct Response in

2012.  The Complaint does not include any allegations that suggest a relationship

between this Event Compensation and any profits Direct Response lost *as a result

of* Defendants' breach of the IC Agreement.  To the extent Plaintiff argues that its

damages should be based on Defendants' unjustly-earned 2013 income, the

Complaint does not include any allegations regarding Defendant's 2013 income. The suggestion that Defendants' 2012 compensation is equal, or even related, to Defendants' 2012 compensation is speculative.  Finally, the Complaint does not allege that Defendants' profits or Nite's income, whatever they were, were impacted by the alleged use of Plaintiff's confidential information.[7]

To the extent that Plaintiff attempts to base its damages on the revenue it no longer receives simply because Defendants no longer work for Direct Response, at least one commentator has rejected this damage theory in cases where a former employee wrongfully competes in violation of a restrictive covenant:

> [I]f the defendant was an employee at will of the plaintiff, who therefore was free to stop working for plaintiff ay any time, the plaintiff must connect his lost profits to something other than the mere fact that the defendant was no longer working for the plaintiff (e.g., he may show that the lost profits were due to the defendant's having provided his new employer with the plaintiff's confidential information), in order to carry his burden of proving that the defendant's violation of the covenant [not to compete] was the proximate cause of the plaintiff's lost profits.

Id.

All that Direct Response has alleged is the income Defendants received in

---

[7] Plaintiff also does not support its conclusory allegation that "the value of the information provided to, or acquired by [Defendants] during [their] tenure at [Direct Response], which relates to clients, leads, training, and sales, exceeds $75,000 in value to the [Plaintiff]."  (Compl. ¶¶ 27, 28.)

2012 as independent contractors with Direct Response.[8]  The Complaint is devoid of allegations regarding the scope and nature of Defendants' work at Plaintiff's competitor, whether Defendants retained customers whose business Plaintiff also sought, or even whether the Defendants worked in the same market in which Plaintiffs worked.  Plaintiff's damages allegation simply does not legally or factually correlate to Plaintiff's breach of contract claims.

The Court does not have a basis to assume any connection between the Defendants' compensation in 2012 and any damage proximately caused in 2013 when Defendants allegedly violated the non-compete and non-disclosure provisions of the IC Agreement.  Plaintiff's claim of damages that exceed the jurisdictional threshold is not based on a proper measure of damage and the Court finds to a legal certainty that Plaintiff has not alleged an amount in controversy that is greater than $75,000.  Plaintiff's unfounded, conclusory allegation that the amount in controversy in this action exceeds the jurisdictional minimum is insufficient for the Court to exercise its subject-matter jurisdiction, and this action is required to be dismissed.  Federated Mut. Ins., 329 F.3d at 809.  Even if the allegation here was damage in an indeterminate amount, Plaintiff failed to prove

---

[8] Defendants were not 'at-will' employees, but Plaintiff does not assert that Defendants breached the IC Agreement in 2013 by terminating the relationship.

the jurisdictional amount by a preponderance of the evidence.  Id. at 807.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Stephen Nicholas Thomas and Nik Thomas Consulting, LLC's Motion to Dismiss [17] is **GRANTED**.[9]

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that Defendants Stephen Nicholas Thomas and Nik Thomas Consulting, LLC's Motion to Compel Arbitration and Stay Proceedings [18] is **DENIED AS MOOT**.

**SO ORDERED** this 1st day of November 2013.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[9] In view of this ruling, the Court does not address whether venue in this district is proper or whether Plaintiff has stated a claim upon which relief can be granted. The Court, however, notes, that Plaintiff did not allege much factual content to support a claim for breach of the non-compete provision of the IC Agreement, or to support the assertion that venue is proper in the Northern District of Georgia.